THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| AVENTURINE ONE, LLC, <br><br>Plaintiffs, <br><br>v. <br><br>THE CITY OF MARSHALL, TEXAS, <br><br>Defendant. | CASE NO. <br><br>JURY DEMAND |

# COMPLAINT

Plaintiff, Aventurine One, LLC ("Aventurine"), through its undersigned counsel, alleges as follows for its Complaint against Defendant, The City of Marshall, Texas (the "City" or "Defendant").

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Aventurine One, LLC is Kentucky limited liability company with its principal place of business in Prospect, Kentucky.

2. Defendant City of Marshall is an incorporated municipality in Harrison County, Texas. Defendant may be served with process by service on the Mayor, Amy Ware, at 401 S. Alamo Boulevard, P.O. Box 698, Marshall, Texas 75670-0698.

3. This lawsuit asserts claims under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* This Court accordingly has Federal question jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law

claim because that claim is related to Plaintiff's federal law claims and arise out of a common nucleus of operative facts. Plaintiff's state law claim forms part of the same case or controversy under Article III of the United States Constitution.

4. The claims asserted in this Complaint arise out of transactions and occurrences within the Eastern District of Texas. Venue is proper pursuant to 28 U.S.C. § 1391(b).

**FACTS**

5. Aventurine is a commercial development company specializing in transforming historic structures into affordable housing.

6. Based on several studies conducted by Aventurine and expressed by the Housing Authority of the City of Marshall, Aventurine proposed to revitalize the Blue Buckle building located at 200 S Columbus Street and 306 E Fannin Street, Marshall Texas (the "Site"), utilizing its pre-existing historic infrastructure to create 47-49 multifamily housing units (the "Project"), in order to fulfill an unmet need within the City, affordable housing.

7. On January 4, 2023, Aventurine entered into an Option to Purchase Agreement ("Purchase Agreement") securing its option to purchase the Site for the Project.

8. The Project was to be funded solely by low income housing tax credits allocated by the Texas Department of Housing and Community Affairs ("TDHCA") for affordable housing projects. These housing tax credits may be used by the tax credit investors and limited partners of an LIHTC housing project to offset a portion of their federal tax liability. In exchange for the housing tax credits, the owner of an affordable housing development must lease the units to eligible low-income tenants for a minimum 15-year LIHTC compliance period, and must guarantee financial performance.

9. In order to obtain approval for an affordable housing project, application must be made to the TDHCA and the developer must, among other factors, demonstrate a need for such a project within the community in which it is proposed. Aventurine submitted the 2023 Multifamily Uniform Application (the "LIHTC Application") for approval of the proposed development in February 2023, including data showing a need for the project and financial feasibility. The LIHTC Application was supported by a Texas State Representative and the Housing Authority of the City of Marshall. TDHCA releases a Qualified Allocation Plan each year that includes competitive scoring criteria based on the state's most critical affordable housing needs. The Blue Buckle application was not only the highest scoring application in its designated TDHCA Region, but also the highest scoring application of any Rural application in the entire state of Texas. Further, the application included additional support from the City, which passed Resolution of Support No. R-23-03, affirming the City's support for the Project and authorizing the City and its representatives "to take all other necessary or appropriate steps or actions associated with this development funding." Resolution of Support No. R-23-03, in recognizing both the need for affordable housing and finding the Project was consistent with the safety and welfare of the community, was passed by City Council on February 23, 2023 with a vote of 6-1.

10. In order to secure the LIHTC, Aventurine is required to have all appropriate zoning in place within approximately two (2) weeks of the tax credit award allocation, which was received on August 28, 2023.

11. Upon information and belief, the Project is currently zoned correctly, however, Aventurine requires a special use permit because the proposed redevelopment will constitute three-story multifamily dwellings.

12. On February 28, 2023, Aventurine submitted an application for a special use permit to approve the proposed development of multifamily housing. The City's Director of Community Development provided a letter in support of Aventurine that stated the "proposed special use permit is consistent with the City's Comprehensive Plan-Future Land Use Map which designates the property future use as downtown activity. If/when the proposed special use permit is approved by the City Council, the entire parcel will be eligible to be permitted…"

13. On March 13, 2023, as part of the special use permit approval process, the Planning and Zoning Commission (the "Commission") held its meeting and public hearing to discuss the Project and any questions members of the community may have for the developers. During this meeting, the Commission's initially denied the special use permit based on illegal and discriminatory objections to "low-income housing" that were voiced by the Commission and City residents. Specifically, a common objection was that the neighbors of the Project feared for their safety and the racial composition of the community as a result of the affordable housing development:

> …do you have a demographic report showing how you're going to fill this building…

> …also, are there going to be any low-income dwellings or is it designed for lower income [individuals]…

> …I've heard rumors about it and. . . I guess my concern was, is the location the best location because my biggest thing is safety and security…directly across from this project there's a school, a [private] school…and then it is on the outskirts of our downtown development district. I wonder does it fit into what we're trying to do with that. Can you speak to what kind of precautions or plans are in place to

minimize any negative impact to our downtown area and to the school that is immediately across the street…

…as far as tenants, you going to have some kind of process to make sure that they are… meeting certain conditions? Maybe clearing process, [for example], not been incarcerated…before they put anybody on section eight they usually do a pretty good job on the tenants part…taking background checks…

…seems like it would make sense in another location…

…it looks nice but the fact that there is a private school one mile up the street…

14. As it was clear that the abrupt change in support for the Project was based on overtly discriminatory and racist commentary, Aventurine requested reconsideration of the Commission's denial of its permit application.

15. Upon information and belief, representatives of the City understood the comments made during the March 13, 2023 Commission Meeting were improperly considered during the permit process, and directed that the Zoning Commissioners undergo formal training to prevent future improper and discriminatory considerations by the Commission.

16. On June 12, 2023, the Commission held another public hearing in reconsideration of Aventurine's permit application. At this meeting, the Commission approved Aventurine's application, voting 3-2.

17. After approving of Aventurine's permit application, the Commission submitted its recommendation to City Council for its final approval.

18. The City's final approval was originally scheduled for the July 13, 2023 Council Meeting, but was then changed to July 23, 2023 purported so they could host a "Town Meeting" over the Project that was already supported by the Council.

19. On July 27, 2023, Aventurine was notified that it was awarded the LIHTC, based on all factors considered in the award of federal tax credits, including scrutiny of the experience of the Project's development team.

20. After delaying the City Council vote, then City then again moved approval of the special use permit to the August 24, 2023 Council Meeting. Based on comments made by council member and some members of the community, Aventurine again notified the City of major concerns it had regarding "opposition" statements that were invoking improper and illegal considerations.

21. On August 24, 2023, the City finally placed the permit approval on the agenda. Aventurine, for the fifth time, presented the *same* information on Project logistics and the extensive amount of work that has already gone into this redevelopment. Although there were no questions or comments from the City Council members themselves, representatives of Aventurine were verbally attacked and defamed by some members of the community who spoke in opposition to the Project. When one person attempted to speak in favor of the Project, he was immediately shut down by the City from speaking, yet the City then allowed opponents to make unsubstantiated and false personal and professional attacks on the Aventurine and its planned Project. The improper and discriminatory questions and comments regarding the Project, included but were not limited to: statements about the likelihood of potential child predators becoming residents; the increase in crime rate if the redevelopment was successful; the "type" of people that may reside in the redevelopment, among other things.

22. Further, in the Council Meeting, packets of information purportedly about Aventurine and other affordable tax credit projects were submitted to the City, but Aventurine was not given access to those materials and was denied to opportunity to respond to them.

23. Although nothing about the Project had changed since the City issued its Resolution of Support and City Council did not ask *any* questions of Aventurine or about the Project at the Council Meeting, after months of continuous pressure and fear mongering of community members and certain City officials, the City ultimately and improperly denied Aventurine's permit.

24. On August 28, 2023, the TDHCA provided Aventurine with a Housing Tax Credit Program Commitment (the "Commitment"), which must be executed after receiving proper zoning and prior to September 27, 2023. If Aventurine does not execute the Commitment by the aforementioned date, it will lose the LIHTC allocation thereby rendering the Project impossible to build. Aventurine will be damaged in excess of $800,000.00 for costs and damages incurred to date, and will suffer additional damages will in excess of $2,500,000.00 in lost profits and consequential damages.

25. Prior to the deadline to execute the Commitment, Aventurine noticed the City of the deadline, and the dramatic consequences and significant loss it would incur. Despite its awareness of damages that would occur, the City did nothing.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT, 42 U.S.C. § 3604(a)**

26. Aventurine realleges and incorporates by reference paragraphs 1 through 25 above, as if fully set forth herein.

27. By the actions described above, the City has violated, and/or continues to violate, the rights of Aventurine, under the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, by:

(a) Making unavailable or denying dwellings to persons because of their income status, race, color, and national origin, in violation of 42 U.S.C. § 3604(a); and

  (b)  Discriminating on the basis of race, color, and national origin in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of a dwelling, in violation of 42 U.S.C. § 3604(b).

  (c)  Coercing, intimidating, or interfering with Plaintiff's efforts to exercise or enjoy their rights to be free of discrimination on the basis of race, color, or national origin, in violation of 42 U.S.C. § 3617.

  28. The City has engaged in, and continues to engage in, a policy, pattern, and practice of discrimination against Aventurine by improperly and illegally refusing to issue a special use zoning permit to Aventurine, on the basis that the housing sought to be developed by Plaintiff constitutes "low-income housing," clearly in violation of the Fair Housing Act.

  29. The City has intentionally, knowingly, and continuously engaged in practices described above, with the intent of denying equal housing opportunities to Aventurine.

  30. As a result of the City's conduct, Aventurine has suffered damages, including: architectural and engineering contractual fees, legal fees, earnest money for the Site, environmental fees, historic fees, LIHTC application fees, third-party studies and reports, and staff times and related fees, in excess of $800,000.00.

  31. As an aggrieved person under the Act, Aventurine is entitled to relief under 42 U.S.C. § 3613(a). That relief includes both actual damages, as described above, and punitive damages, pursuant to 42 U.S.C. § 3613(c)(2).

## SECOND CAUSE OF ACTION
## VIOLATION OF THE TEXAS FAIR HOUSING ACT

32. Aventurine realleges and incorporates by reference paragraphs 1 through 25 above, as if fully set forth herein.

33. The City's actions and inactions, as described above, make unavailable or deny to numerous individuals housing because of their race, color, religion, familial status, or national origin. Both because of the City's discriminatory intent and because of the discriminatory effects of its actions and inactions, the City's conduct is a brash violation of the Texas Fair Housing Act (the "Texas Act"), Tex. Prop. Code § 301.001 *et seq.*

34. As aggrieved persons under the Texas Act, Aventurine is entitled to relief under Tex. Prop. Code § 301.151(a). That relief includes both actual damages, as described above, punitive damages, and reasonable attorney's fees and court costs, pursuant to Tex. Prop. Code § 301.153.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

35. Aventurine realleges and incorporates by reference paragraphs 1 through 25 above, as if fully set forth herein.

36. The Fourteenth Amendment to the U.S. Constitution and the Texas Constitution further guarantee that Aventurine be afforded the equal protection of the laws, which prohibits the City from treating Aventurine, in the exercise of its rights, differently than similarly situated persons and entities absent a compelling state interest, or even a substantial relation to an important or significant government purpose or a rational basis.

37. As a result of the proposed Project, the City treated Aventurine in a manner which it has never treated other developers who have applied for special use permits in Marshall. The City has never subjected any similarly situated individual or entity applying for a permit to the species of process to which it subjected Aventurine as a mechanism to ensuring that neighbors of Marshall succeeded in opposing Aventurine's special use permit application in order to prevent the "attack" of people of color and low socioeconomic status upon their neighborhood. Indeed, the myriad obstacles which the City erected to prevent Aventurine from obtaining its special use permit to develop its Property were intended to, and ultimately did, facilitate the unlawful and unconstitutional denial of Aventurine's permit application.

38. There is no rational basis, and certainly no compelling state interest, that can justify the City's actions as described above, which led to City Council's denial of Aventurine's Application.

39. The City has, with discriminatory intent or purpose, implemented enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice or custom of violating the clearly established equal protection rights of Aventurine.

40. The City's conduct demonstrates its deliberate indifference to the violation of Aventurine's constitutional rights to equal protection.

41. As a direct and proximate result of the City's actions, Aventurine has suffered harm including, without limitation, the violation of its constitutional rights and further the income Aventurine would have earned through the development of the Project.

## FOURTH CAUSE OF ACTION
## <u>VIOLATION OF SUBSTANTIVE DUE PROCESS</u>

42. Aventurine realleges and incorporates by reference paragraphs 1 through 25 above, as if fully set forth herein.

43. The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits deprivations of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency, and fair play. Substantive due process also prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

44. The City has adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the clearly established due process rights of Aventurine, including, without limitation, by acquiescing the racially-motivated campaign of the City's neighbors to oppose Aventurine's special use permit in order to prevent Aventurine from developing the Project.

45. The City knew or should have known that its conduct as described above was unlawful and unconstitutional. The City's encouragement, condonation, or acquiescence to the use of the permitting application process to delay and manipulate Aventurine's ability to obtain a special use permit to develop its Project in order that the racist effort to oppose its permit application constitutes gross negligence amounting to deliberate indifference to the constitutional rights of Aventurine. Indeed, the City's course of conduct as described above reflects its clear intent to deprive Aventurine of its constitutional rights.

46. As a direct and proximate result of the City's infringement upon Aventurine's substantive due process rights, it has suffered harm including, without limitation, the violation of

its constitutional rights and further the income Aventurine would have earned through the development of the Project.

## FIFTH CAUSE OF ACTION
## ATTORNEYS' FEES FOR BAD FAITH

47. Aventurine realleges and incorporates by reference paragraphs 1 through 25 above, as if fully set forth herein.

48. The intentional, bad faith refusal by the City to comply with its statutory obligations under both federal and Texas laws, have caused Aventurine unnecessary trouble and expense and have completed Aventurine to commence this lawsuit to enforce its rights.

49. As this lawsuit was commenced because of the intentional bad faith of the City, Aventurine is entitled to recover its attorneys' fees and other expenses of litigation from the City under 42 U.S.C. § 3613(c) and Tex. Prop. Code § 301.153.

50. Aventurine is entitled to a judgment against the City under 42 U.S.C. § 3613(c) and Tex. Prop. Code § 301.153, for its attorneys' fees and other expenses of litigation in such amounts as will be proven at the trial of this case.

## PRAYER OF RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Declare that Defendant's acts, practices, and policies complained of herein violated and violate Plaintiff's rights as secured by the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*; the Equal Protection clause and the Substantive Due Process clause of the Fourteenth Amendment to the U.S. Constitution; the "affirmatively furthering" obligations of the Fair Housing Act, 42 U.S.C. § 3608; and the Texas Fair Housing Act, Tex. Prop. Code § 301.001 *et seq*.

(b) Enjoin Defendant, its agents, employees, successors, assigns, and those acting in active concert, combination or participation with them, from engaging in any

    policies or practices that deprive Plaintiff of its rights secured by any and all of the statutes cited in sub-paragraph (a), above, including among other things:

    (ii) Enjoining Defendant and its agents, employees, successors, and assigns, from engaging in any other discriminatory acts that perpetuate or contribute to segregation in the City of Marshall; and

    (iii) Ordering Defendant to take and/or fund affirmative steps, supervised by this Court, to overcome the effects of past discriminatory practices, including the funding of remedial activities necessary to overcome the perpetuation of segregation in the City of Marshall;

(c) Compensatory damages in an amount this Court shall consider to be just, fair, and reasonable;

(d) Punitive damages;

(e) Injunctive relief requiring the City to issue Aventurine a special use permit, and any and all other approvals necessary to permit Aventurine to continue with the Project;

(d) Award Plaintiff its costs and attorneys' fees in this action; and

(e) Award such other relief as this Court deems reasonable, necessary and just.

This the 29th day of September, 2023.

        /s/ *William T. Hughey*
       William T. Hughey (TBN: 10245500)
       THE HUGHEY LAW FIRM
       P.O. BOX 2012
       Marshall, TX 75671
       Telephone: (903) 472-3719
       Facsimile: (866) 823-7185
       Hugheylaw@Sbcglobal.net
       *Counsel for Plaintiff*